Electronically Filed - Greene - August 21, 2020 - 03:36 PM

## IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

| | |
|---|---|
| BAPTIST BIBLE FELLOWSHIP INTERNATIONAL,<br><br>     Plaintiff,<br><br>v.<br><br>BLACKBAUD, INC.,<br>**Serve:  CSC-Lawyers Incorporating<br>       Service Company<br>       221 Bolivar Street<br>       Jefferson City, MO 65101**<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PETITION

**COMES NOW**, Plaintiff Baptist Bible Fellowship International, by and through its undersigned counsel, and for its cause of action against Defendant Blackbaud, Inc., states and avers as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Baptist Bible Fellowship International ("Plaintiff") is a benevolent corporation in good standing, organized and existing under the laws of the State of Missouri, with its principal place of business located in Springfield, Greene County, Missouri.

2.     Defendant Blackbaud, Inc. ("Defendant") is a foreign corporation, organized and existing under the laws of the State of Delaware, with its principal place of business located in Charleston, South Carolina, and is authorized to do business in the State of Missouri.

3.     This Court has personal jurisdiction over Defendant pursuant to Missouri's Long Arm Statute, MO. REV. STAT. § 506.500, in that the allegations contained herein constitute:

    a.  The transaction of business within the State of Missouri;

    b.  The making of a contract within the State of Missouri; and/or

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

    c.  The commission of a tortious act within the State of Missouri.

4.      There are sufficient minimum contacts between Defendant and the State of Missouri, which give rise to Plaintiff's cause of action, such that this Court's exercise of jurisdiction over Defendant comports with the requirements of due process, namely:

    a.  Defendant transacted business with Plaintiff in Missouri;

    b.  Defendant entered into a contract with Plaintiff in Missouri;

    c.  Defendant made false representations to Plaintiff's agents and employees in Missouri; and

    d.  Defendant sent a defective product to Missouri for use by Plaintiff.

5.      Venue is proper in this Court pursuant to MO. REV. STAT. § 508.010.4, in that this Petition alleges causes of action sounding in tort and Plaintiff was first injured in Greene County, Missouri, by the tortious acts and/or omissions of Defendant as alleged herein.

6.      Alternatively, venue is proper in this Court pursuant to MO. REV. STAT. § 508.010.2(4), in that Defendant is a nonresident of the State of Missouri.

## FACTUAL BACKGROUND

7.      Plaintiff is a benevolent corporation consisting of a fellowship of pastors and, by extension, a network of preachers, churches, missionaries, and educational institutions worldwide, affiliated for the purpose of church planning and sharing the Word of God.

8.      Defendant is a software company that provides various types of software to nonprofits, foundations, corporations, education institutions, healthcare organizations, religious organizations, and others in what Defendant refers to as the "social good" community.

9.      Among the products offered by Defendant is Financial Edge NXT ("FE NXT"), a non-profit accounting software.

10. Also included in the products offered by Defendant is Raiser's Edge NXT ("RE NXT"), a donor management software.

11. In or around January 2019, Plaintiff received information that its then customer relationship management software supplier was acquired by Defendant.

12. On or about February 27, 2019, Plaintiff initiated contact with Defendant regarding their customer relationship management software.

13. In the initial contact, Plaintiff specifically inquired of Defendant as to whether Plaintiff would be able to use Defendant's software to query Plaintiff's onsite databases directly using Structured Query Language ("SQL") and Visual Basic for Applications ("VBA"), and informed Defendant that it must have the ability to do so in order for Plaintiff's normal daily operations to function as needed.

14. Defendant's representative initially responded to Plaintiff's query in the negative, and Plaintiff informed the representative that they would not be purchasing the above software.

15. Shortly after the above communications, another sales representative for Defendant contacted Plaintiff and indicated that the original salesperson was mistaken and that Defendant's software programs could meet Plaintiff's expressly stated query requirements.

16. Throughout March and April 2019, Plaintiff and Defendant had several meetings and communications in which Plaintiff repeatedly expressed the importance of being able to query its onsite software databases from within SQL and VBA.

17. Plaintiff requested to communicate directly with Defendant's technical department to confirm the performance promises made by the sales personnel, but were told they could not do so prior to signing a contract.

18.     Plaintiff expressed to Defendant that the ability to query onsite databases from within SQL and VBA is a necessary requirement of any software Plaintiff purchases, and that the ability to do so is critical to Plaintiff in maintaining efficiency and productivity.

19.     Defendant expressly represented to Plaintiff on multiple occasions that it was possible to directly query the onsite databases using Defendant's software.

20.     Defendant expressly represented it had other clients who perform queries in the manner Plaintiff desired.

21.     Defendant expressly represented Plaintiff could write its own queries outside of Defendant's software to query the onsite databases.

22.     Defendant expressly represented to Plaintiff that Defendant's software would satisfy Plaintiff's needs as expressed throughout the course of the foregoing discussions.

23.     On or about June 26, 2019, in reliance on Defendant's representations, Plaintiff entered into a contract with Defendant for subscriptions to FE NXT and RE NXT, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit A**.

24.     The contract between Plaintiff and Defendant (hereinafter, "Contract") was executed by Defendant's President on June 25, 2019, and was accepted and executed by Plaintiff's Mission Director on June 26, 2019, in Springfield, Greene County, Missouri.

25.     Following execution of the Contract, Plaintiff discovered it could not query its onsite software databases directly using SQL or VBA.

26.     As provided for in the Contract, Plaintiff gave Defendant notice of the issue and requested Defendant provide a solution to the problem.

27.     Plaintiff first contacted Defendant on July 3, 2019, but Defendant was unable to resolve the issue.

28.     Plaintiff again contacted Defendant on July 11, 2019, and was told to proceed with the software migration and Plaintiff's concerns would be addressed at a later date.

29.     To date, Defendant has failed to find a solution that would allow Plaintiff to query its onsite software databases directly using SQL or VBA.

30.     In an attempt to mitigate its damages, Plaintiff contacted third party vendors that work with Defendant to find a solution but was unsuccessful in doing so.

31.     The failure of Defendant's software to perform as represented and as warranted has rendered the software useless to Plaintiff.

## COUNT I – FRAUDULENT MISREPRESENTATION

**COMES NOW**, Plaintiff Baptist Bible Fellowship International, by and through its undersigned counsel, and for Count I of its cause of action against Defendant Blackbaud, Inc., states and avers as follows:

32.     Plaintiff incorporates by reference the foregoing paragraphs of its Petition as though fully set forth herein.

33.     In order to induce Plaintiff to enter into the Contract with Defendant, Defendant represented to Plaintiff that:

   a.   Plaintiff would be able to query its onsite databases with Defendant's software using SQL and VBA;

   b.   Defendant had other clients who perform queries in the manner Plaintiff desired;

   c.   Plaintiff could write its own queries outside of Defendant's software to query Plaintiff's onsite data directly; and

   d.   Defendant's software would satisfy Plaintiff's needs as expressed throughout the course of negotiating the Contract.

34.     Each of the foregoing representations was false, in that:

    a.  Defendant's software was incapable of enabling Plaintiff to query its onsite databases with Defendant's software using SQL and VBA;

    b.  Upon information and belief, Defendant's other clients were unable to query their onsite databases with Defendant's software using SQL and VBA;

    c.  Defendant's software does not allow Plaintiff to write its own queries outside of Defendant's software to query onsite databases; and

    d.  Defendant's software failed to satisfy Plaintiff's needs as expressly stated throughout the course of negotiating the Contract and, as supplied to Plaintiff, is essentially worthless to Plaintiff.

35.     The foregoing representations were material because Plaintiff would not have entered into the Contract had it known said representations were false, in that:

    a.  Plaintiff required the ability to query its onsite software databases using SQL and VBA and informed Defendant that Plaintiff's normal daily operations depended on it;

    b.  Plaintiff required the foregoing in all software it purchased for its operations in order to maintain efficiency and productivity, and so informed Defendant; and

    c.  Plaintiff cannot use software in the ordinary course of its operations in that its onsite databases cannot be queried with Defendant's software using SQL and VBA.

36.     Upon information and belief, Defendant knew its software was not programmed to allow Plaintiff to directly query its onsite databases using SQL and/or VBA; knew Defendant's other clients were unable to do so; knew Plaintiff could not write its own queries

outside Defendant's software to query the onsite data contained therein; and knew Defendant's software would not satisfy Plaintiff's expressly-stated requirements and needs.

37.     Defendant intended for Plaintiff to act on the representations in entering into the Contract and subscribing to Defendant's software programs.

38.     Plaintiff did not learn until after executing the Contract that the foregoing representations made by Defendant were false, as it had not yet fully implemented the software and was not allowed access to Defendant's "Knowledge Base" that provided technical details or Defendant's technical staff until after a contract was signed.

39.     Plaintiff relied on Defendant's representations by entering into the Contract with Defendant and subscribing to its software programs.

40.     Plaintiff had a right to rely on Defendant's representations, as Defendant held itself out as a company specializing in customer relationship management software and accounting software for non-profits, whereas Plaintiff is a religious organization with no particular expertise in the field of customer relationship management or accounting software without being allowed to access the Defendant's technical staff and/or Knowledge Base.

41.     As a direct and proximate result of Defendant's false representations, Plaintiff has been damaged in the amount paid to Defendant for the subscriptions, as well as incidental losses and expenses incurred as a result of trying to deal with Defendant for over a year on these issues.

42.     Defendant's conduct as described herein was outrageous because of evil motive or a reckless indifference to the rights of Plaintiff, justifying an award of punitive damages in order to deter Defendant and others similarly situated from like conduct in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendant in such sum as is fair and reasonable, together with punitive damages sufficient to deter Defendant and others similarly

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

situated from like conduct in the future; for such interest as allowed by law; for its costs herein incurred and expended; and for such other and further relief as the Court deems just and proper.

### COUNT II – NEGLIGENT MISREPRESENTATION

**COMES NOW**, Plaintiff Baptist Bible Fellowship International, by and through its undersigned counsel, and for Count II of its cause of action against Defendant Blackbaud, Inc., states and avers as follows:

43.     Plaintiff incorporates by reference the foregoing paragraphs of its Petition as though fully set forth herein.

44.     In the course of Defendant's business as a provider of customer relationship management software and accounting software for non-profits, and with a pecuniary interest in selling Plaintiff a subscription to said software, Defendant represented to Plaintiff that:

      a.   Plaintiff would be able to query its onsite databases with Defendant's software using SQL and VBA;

      b.   Defendant had other clients who perform queries in the manner Plaintiff desired;

      c.   Plaintiff could write its own queries outside of Defendant's software to query the onsite data; and

      d.   Defendant's software would satisfy Plaintiff's needs as expressed throughout the course of negotiating the Contract.

45.     Defendant should have known said representations were false but failed to exercise reasonable care in determining the truth or falsity of said representations.

46.     Defendant intentionally made the foregoing representations to Plaintiff in a particular business transaction, namely the negotiation of the Contract referenced above.

47.     Plaintiff justifiably relied on Defendant's representations because Defendant held itself out as a company specializing in customer relationship management software and accounting software for non-profits, whereas Plaintiff is a religious organization with no particular expertise in the field of customer relationship management or accounting software without being allowed to access the Defendant's technical staff and/or Knowledge Base.

48.     As a direct and proximate result of Defendant's negligent failure to determine the truth or falsity of the foregoing representations, Plaintiff has been damaged in the amount paid to Defendant for the subscriptions, as well as incidental losses and expenses incurred as a result of trying to deal with Defendant for over a year on these issues.

49.     Defendant's conduct as described herein was outrageous because of evil motive or a reckless indifference to the rights of Plaintiff, justifying an award of punitive damages in order to deter Defendant and others similarly situated from like conduct in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendant in such sum as is fair and reasonable, together with punitive damages sufficient to deter Defendant and others similarly situated from like conduct in the future; for such interest as allowed by law; for its costs herein incurred and expended; and for such other and further relief as the Court deems just and proper.

### COUNT III – BREACH OF CONTRACT/BREACH OF WARRANTY

**COMES NOW**, Plaintiff Baptist Bible Fellowship International, by and through its undersigned counsel, and for Count III of its cause of action against Defendant Blackbaud, Inc., states and avers as follows:

50.     Plaintiff incorporates by reference the foregoing paragraphs of its Petition as though fully set forth herein.

51.     On or about June 26, 2019, Plaintiff and Defendant entered into an agreement whereby Defendant agreed to supply Plaintiff with subscriptions to Defendant's FE NXT and RE NXT software, and Plaintiff agreed to pay for the subscriptions over a three-year term as follows:

    a.   Year 1: $32,710.13

    b.   Year 2: $27,110.13

    c.   Year 3: $27,110.13.

(the "Contract").

52.     The Contract expressly warranted the software would materially perform, and further provided that if a subscription failed to perform, Plaintiff must notify Defendant within thirty days of the occurrence of the problem to give Defendant the opportunity to resolve it.

53.     Defendant breached its warranty, in that the software did not perform as warranted, did not materially perform, and was substantially defective.

54.     To the extent Defendant's warranty was a limited warranty, it failed of its essential purpose and is avoided, in that Defendant was unable to correct the defects in the software, despite being given a reasonable and ample period of time to do so.

55.     Defendant also breached the Contract by failing to cure the defects in the software within the thirty-day cure period, despite timely notice from Plaintiff.

56.     Plaintiff performed all of its obligations under the Contract and the warranty contained therein.

57.     As a result of Defendant's breach of the Contract and the warranty contained therein, Plaintiff has been damaged in a sum in excess of $25,000.00.

WHEREFORE, Plaintiff prays for judgment against Defendant in the sum of at least $25,000.00, and such additional damages as may be proven at the trial of this cause; for such interest as allowed by law; for its costs herein incurred and expended; and for such other and further relief as the Court deems just and proper.

<u>COUNT IV – RESCISSION</u>

COMES NOW, Plaintiff Baptist Bible Fellowship International, by and through its undersigned counsel, and for Count IV of its cause of action against Defendant Blackbaud, Inc., states and avers as follows:

58.     Plaintiff incorporates by reference the foregoing paragraphs of its Petition as though fully set forth herein.

59.     On or about June 26, 2019, Plaintiff and Defendant entered into the Contract.

60.     The Contract is either void or voidable, and subject to rescission, on the following grounds:

    a.  Defendant materially breached the Contract by providing software that did not perform as represented and/or warranted and by failing to cure the problem within a reasonable time;

    b.  Defendant induced Plaintiff to enter into the Contract by intentionally and/or negligently misrepresenting the capabilities of Defendant's software and its suitability for use in Plaintiff's operations, as stated above; and/or

    c.  Plaintiff and Defendant were mutually mistaken as to the capabilities of Defendant's software and/or its suitability for use in Plaintiff's operations and, therefore, no meeting of the minds occurred between Plaintiff and Defendant.

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

61.     Plaintiff has tendered its subscriptions to Defendant's software to Defendant for

purposes of rescinding the Contract, which tender was rejected by Defendant.

**WHEREFORE**, Plaintiff prays for judgment rescinding the Contract; that the parties be

placed in the same position as they were prior to the execution of the Contract, including the

return of all consideration tendered thereunder by each party; for its costs herein incurred and

expended; and for such other and further relief as the Court deems just and proper.

**LOWTHER JOHNSON
ATTORNEYS AT LAW, LLC**

By: _Glenn P. Green_

Glenn P. Green
MoBar No. 40921
ggreen@lowtherjohnson.com

Aaron M. Klusmeyer
MoBar No. 63006
aklusmeyer@lowtherjohnson.com

901 E. Saint Louis Street, 20th Floor
Springfield, MO  65806
Office: (417) 866-7777
Fax No: (417) 866-1752

***Attorneys for Plaintiff***

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

# blackbaud™

2000 Daniel Island Drive, Charleston SC 29492-7541

# Order Form

Site ID:
Order Number:     Q-00733225

| Bill to: | Sold to: | | |
|---|---|---|---|
| Heidi Quezada | Kena Mann | Valid Until: | 6/28/2019 |
| Baptist Bible Fellowship | Baptist Bible Fellowship | Currency: | USD |
| International | International | Payment Terms: | NT30 |
| 720 E Kearney St | 720 E Kearney St | | |
| Springfield,MO 65803-3428 | Springfield,MO 65803-3428 | | |

## Subscriptions

**FE NXT Learn More**

Price: $2,199.96/year
*Billed: Annual*
*Contract term:* **36 months**

| | |
|---|---|
| Year 1: | $1,760.00 |
| Year 2: | $1,760.00 |
| Year 3: | $1,760.00 |

**FE NXT Pro PAE Offer**
2 User
Included: Purchase Orders, Budget Management, Advanced Security, Cash Management, General Ledger, Project Grant Endowment, Accounts Payable, Cash Receipts, View Only, eLibrary, Fixed Assets, Accounts Receivable, Queue, Accounting Forms, FE NXT Expense Management

Price: $11,842.56/year
*Billed: Annual*
*Contract term:* **36 months**

| | |
|---|---|
| Year 1: | $9,474.13 |
| Year 2: | $9,474.13 |
| Year 3: | $9,474.13 |

**Online Express RE NXT**
37,500 Constituent Records
500,000 Online Express Email Sends (Annual Limit)

Price: $0.00/year
*Billed: Annual*
*Contract term:* **36 months**

| | |
|---|---|
| Year 1: | $0.00 |
| Year 2: | $0.00 |
| Year 3: | $0.00 |

**Online Express RE NXT Events**

Price: $0.00/year
*Billed: Annual*
*Contract term:* **36 months**

| | |
|---|---|
| Year 1: | $0.00 |
| Year 2: | $0.00 |
| Year 3: | $0.00 |



EXHIBIT
A

**Online Express RE NXT Membership**
1 Each

Price: $0.00/year
Billed: Annual
Contract term: 36 months

| | |
|---|---|
| Year 1: | $0.00 |
| Year 2: | $0.00 |
| Year 3: | $0.00 |

**Blackbaud Purchase Card**

Price: $0.00/year
Billed: Annual
Contract term: 36 months

| | |
|---|---|
| Year 1: | $0.00 |
| Year 2: | $0.00 |
| Year 3: | $0.00 |

**RE NXT Learn More**

Price: $2,412.00/year
Billed: Annual
Contract term: 36 months

| | |
|---|---|
| Year 1: | $2,412.00 |
| Year 2: | $2,412.00 |
| Year 3: | $2,412.00 |

**RE NXT Pro PAE Offer**
37,500 Constituent Records
Included: EFT, Tribute, Payment Processing, RE NXT eLibrary, Planned Gift
Tracker, Search, Events, Alum for Alumni/ae Tracking, Membership, Volunteer,
ResearchPoint, DES Internal Allocation NXT, NXT TA Internal Allocation, RE NXT
Email powered by Blackbaud SKY, SKY Reporting Entitlement, Pro Subscription

Price: $22,440.00/year
Billed: Annual
Contract term: 36 months

| | |
|---|---|
| Year 1: | $13,464.00 |
| Year 2: | $13,464.00 |
| Year 3: | $13,464.00 |

# Services

**FE NXT Detail Import 2 Years FPE**

Price: $1,800.00
Billed: 50% Up Front/ 50% in 90 Days

$1,260.00

**FE NXT RE Integration Consulting**

Price: $2,700.00
Billed: 50% Up Front 50% in 90 Days

$1,890.00

**Project Management 20 FPE**

Price: $3,500.00
Billed: 50% Up Front/ 50% in 90 Days

$2,450.00

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

|  | | |
|---|---|---|
| New order totals: | Year 1: | $32,710.13 |
|  | Year 2: | $27,110.13 |
|  | Year 3: | $27,110.13 |

## Usage Allowance

| | |
|---|---|
| Online Express RE NXT | 37,500 Constituent Records |
| Online Express RE NXT Email Sends | 500,000 Online Express Email Sends (Annual Limit) |
| RE NXT Pro | 37,500 Constituent Records |

## Overage fee

**Online Express RE NXT**
Online Express Email Sends (Annual Limit) : $.007 Per additional email sent

## Transaction fee

**Blackbaud Purchase Card**
.5% Annual Rebate

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

Enter text here to overwrite the above PO Number or add a note to the invoice:

The fees and terms on this Order Form are valid until 6/28/2019. This Order Form is governed by the Blackbaud Solutions Agreement and applicable terms and conditions in the Online Terms and Conditions Center, and by signing this Order Form You agree to these terms.

Your purchase includes Blackbaud Merchant Services ("BBMS") to enable You to process credit and bank card transactions. The current BBMS fees are set forth at http://www.blackbaud.com/bbms/bbms-tier1.aspx. Other payment processing options are available and the current fees are set forth at http://www.blackbaud.com/bbms/bbms-tier3.aspx. Payment processing fees are subject to change. A description of Blackbaud's payment processing solutions is available when setting up Your payment processing account with Blackbaud, and a copy is set forth at http://www.blackbaud.com/files/bbms/bbpstc.pdf

*Renewals:*

*Unless You notify Blackbaud in writing of Your desire to cancel at least forty-five (45) days prior to the start of the upcoming renewal term, Your Subscription shall renew for consecutive terms equal in length to the initial term. Renewal fees or Subscription pricing for renewal terms are subject to a reasonable adjustment.*

Fees, Expenses and Payment:

a. Fees, Duties, and Taxes. Fees for Solutions are set forth in this Order Form, exclusive of taxes. Unless Blackbaud has a current and valid tax exemption certificate on file, You will be responsible for all applicable taxes.
b. Expenses. If Blackbaud incurs reasonable travel and living expenses to perform Your Services, You are required to reimburse Blackbaud for such expenses pursuant to Blackbaud's then-current travel policy, available to You upon request.
c. Invoices. The initial invoice for Your Solutions is issued immediately following Order Form signature. All other invoices shall be issued as follows: (i) invoices for Services will be issued in accordance with the applicable SOW; (ii) pro forma invoices for upcoming Subscription renewals shall be sent to You at least sixty (60) days prior to the start of the renewal term; (iii) and unless terminated in compliance with the Suspension; Acceptable Use Policy (Section 3(a) of the Blackbaud Solutions Agreement), final renewal invoices for Subscriptions will be issued at least thirty (30) days prior to the start of the renewal term.
d. Payments and Late Payments. Payment is due as stated in this Order Form. All payments are non-refundable in the event of Our uncured material default under this agreement. If You believe an invoice is inaccurate, You must notify Blackbaud in writing within thirty (30) days from the date of such invoice. Except for amounts subject to a good faith dispute, We may invoice You an interest rate allowable under applicable laws for any outstanding invoice not paid when due.

**State Sales Tax Exemption Certificates**

**Does the State in which You are making this purchase provide a sales tax exemption for Your organization?**

Yes

If You answer "Yes" to this question, We are required to have a copy of the "State issued sales tax exemption certificate" for Your organization on file. Please note We cannot accept an IRS or State issued letter for 501(c)(3) status, entity incorporation, or income / franchise tax exemption as these are not acceptable forms for sales tax exemption purposes. You will receive a separate email link from Blackbaud@teamscert.com which will provide detailed instructions about how to submit Your sales tax exemption form. If You do not submit a valid sales tax exemption form within 5 business days from the initial email contact, Your organization will be treated as not tax exempt.

If You cannot provide a "State issued sales tax exemption certificate" or Your State does not have a sales tax, please answer "No" to this question.

If You answer "No" to this question or You do not provide a valid sales tax exemption form with the 5 business day time period noted above, You will not receive a credit for sales tax billed prior to receipt of a valid exemption certificate.

**Sales Tax on Products Purchased**

**Blackbaud Confidential** | 2000 Daniel Island Drive, Charleston, SC 29492

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

Sales tax will only be charged on this order if the items purchased are subject to tax, depending on State law. For example, state sales tax rules vary depending on the delivery method of the software.

If You must remit sales tax to Your vendor but can later claim a refund with Your State, please answer "No" to this question. Blackbaud must still charge sales tax on this order (if applicable) even though You may ultimately receive a refund of the sales tax.

Purchase Card Additional Terms and Conditions

1. This Purchase Card Additional Terms and Conditions (these "Terms") represent an agreement between You and Blackbaud that governs Your participation in the Purchase Card Program (each term as defined below). You must accept these Terms and the Purchase Card Agreement in order to participate in the Program.

2. Definitions.

(a) "Application" means the form You complete for the Bank to evaluate Your participation in the Program.
(b) "Bank" means Regions Bank and any other financial entity that may offer the Card.
(c) "Blackbaud", "Our", and "We" mean Blackbaud, Inc. and its affiliates and subsidiaries.
(d) "Card" means the co-branded purchase card issued by the Bank. Each reference to "Card" also shall include all "Cards" provided to You.
(e) "Purchase Card Agreement" means the separate agreement You enter into with the Bank to provide a purchase card account.
(f) "Program" means the Blackbaud Purchase Card Program between Blackbaud and You.
(g) "Rebate" means any amount paid by Blackbaud to You based upon the volume of purchases made under the Program.
(h) "You" and "Your" mean the client set forth on the Application.

3. Processing Bank. At any time under these Terms, Blackbaud may engage a new Bank to provide the Card associated with this Program. If You agree to enter into a new Purchase Card Agreement with such Bank, You authorize Blackbaud to disclose Your Application to new Bank and to notify current Bank of your termination of Your Purchase Card with current Bank (and You hereby agree that Blackbaud may act as Your agent for this purpose). We may terminate these Terms and Your participation in the existing Program, which include rebates, if You do not enter into a new Purchase Card Agreement with new Bank.

4. Rebates. You acknowledge that Blackbaud may receive volume-based rebates for purchases made by Card users. Eligibility for the Rebate is contingent upon entering into and maintaining an agreement with Our partner Bank(s). Blackbaud will calculate the amount of the Rebate based on the total volume of charges posted to Your Card account during the preceding calendar year beginning January 1, minus any chargebacks, unpaid balances, fees, and fraudulent charges, calculated by the percentage indicated on the Order Form. Blackbaud may terminate the Rebate immediately for any reason. Rebates for the prior calendar year will be paid by February 28th the following year. Customers terminating prior to the end of the calendar year will forfeit their rights to the rebate.

5. Blackbaud Solutions Agreement. The terms and conditions set forth in the Blackbaud Solutions Agreement are hereby incorporated into these Terms.

Your purchase includes Blackbaud Merchant Services ("BBMS") for the processing of electronic payments within your Blackbaud Solution(s) and is subject to the Blackbaud Payment Services Terms. You agree to use BBMS as your exclusive processor for all available forms of electronic payments within all Blackbaud Solutions for the term set forth on this Order Form. Use of an alternate processing solution during this term is subject to interconnect gateway fees plus additional processing fees equal to the standard BBMS rate.

You acknowledge that certain aspects of Our Solutions interface with and share client content with partner applications purchased by You from third parties ("Partner Applications"). We make no warranty with respect to any Partner Applications, and We shall have no liability should client content become unavailable from such Partner Applications for any reason. Your use and remedies with respect to such Partner Applications shall be pursuant to the applicable third-party agreements in place between You and the third-party provider of the Partner Application.

Pricing for Your Blackbaud subscription solution is based on Your number of records. If You exceed the number of records for Your level, Your Subscription will be upgraded to the next applicable level. Once You are upgraded, You may not reset to a lower usage level until Your next renewal period.

Electronically Filed - Greene - August 21, 2020 - 03:36 PM

## Scopes of Work

The Professional and Consulting services charges listed on this Order Form are for this purchase only and are subject to the Professional and Consulting Services General Terms. Information specific to the Professional and Consulting services project, or work, can be found in the applicable Statement(s) of Work (SOW).

Project Contact Name:

Enter text here to overwrite the above Project Contact Name:  Kena Mann

Project Contact Email:

Enter text here to overwrite the above Project Contact Email:  kena@bbfimissions.com

| | |
|---|---|
| **Project Management 20 FPE** | https://www.blackbaud.com/files/sow/ACSPM2FPEProjectManagement2OfferingsV3.pdf |
| **FE NXT Detail Import 2 Years FPE** | https://www.blackbaud.com/files/sow/ACSFE2GLHISTFPE2YearGLDetailSOW_H2_2017.pdf |
| **FE NXT RE Integration Consulting** | https://www.blackbaud.com/files/sow/ACSFEB2BT3FEREIConsultingFEREIntegration.pdf |
| **RE NXT Pro NC Implementation** | https://www.blackbaud.com/files/sow/ACSRENXTPROFPENC.pdf |
| **Mass Merge NC** | https://www.blackbaud.com/files/sow/MassMerge.pdf |
| **RE NXT Pro NC Conversion Services FPE** | https://www.blackbaud.com/files/sow/RENXTPROCONVFPEPRORaisersEdgeConversion.pdf |
| **FE NXT Pro NC Implementation** | https://www.blackbaud.com/files/sow/ACSFENXTPROFPE.pdf |

Signatures

IN WITNESS WHEREOF, the parties have caused this Order Form to be executed by their duly authorized representatives.

AGREED:

Client: **Baptist Bible Fellowship International**                    Blackbaud, Inc.

By: *Jon Konnerup*

Name:  Jon Konnerup                                                     Name: Kevin Mooney

Title:  Mission Director                                                Title: President, General Markets Business Unit

Date:  Jun 26, 2019                                                     Date: 6/25/2019

(*Effective Date)

*All proposed modifications, variations, edits, or additions to this Order Form are objected to and deemed material unless otherwise mutually agreed to in writing.*

**Blackbaud Confidential**   |   2000 Daniel Island Drive, Charleston, SC 29492